UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


SHERYL DOYON,                          )
                                       )
        Plaintiff                      )
                                       )
v.                                     )        No. 2:11-cv-168-NT
                                       )
RITE AID CORPORATION, et al.,          )
                                       )
        Defendants                     )


## MEMORANDUM DECISION AND ORDER ON
## MOTION TO COMPEL

Sheryl Doyon, the plaintiff in this putative class action, moves to compel defendants Rite Aid Corporation and Eckerd Corporation, d/b/a Rite Aid, to produce the names and addresses of putative class members. *See* Plaintiff's Motion To Compel Production of Class List ("Motion") (Docket No. 26). The defendants oppose the Motion and argue, in the alternative, that, if it is granted, the court should supervise any communications with absent putative class members or, at a minimum, enter a protective order. *See* Defendants' Opposition to Plaintiff's Motion To Compel Production of Class List ("Opposition") (Docket No. 27). The plaintiff does not oppose the entry of a protective order but strongly opposes court supervision of her counsel's communications with putative class members. *See* Reply Memorandum in Support of Plaintiff's Motion To Compel Production of Class List ("Reply") (Docket No. 29) at 5-6. For the reasons that follow, I grant the Motion, grant the defendants' requests for the entry of a protective order and for some level of court supervision of the plaintiff's communications with putative class members, and direct the parties to confer regarding the terms of proposed orders to be filed with the court.

## I. Applicable Legal Standards

In this district, no written discovery motion may be filed without the prior approval of a judicial officer. *See* Local Rule 26(b). During a September 27, 2011, teleconference with counsel, I granted prior approval for the filing of the Motion. *See* Docket No. 25 at 2. A motion for pre-certification discovery in a putative class action implicates the discovery rules. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 & 354 n.20 (1978) ("[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation. . . . We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23, or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.") (citation omitted).

> Federal Rule of Civil Procedure 26 provides, in relevant part:
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the . . . identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Such discovery is subject to the following limitations:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II. Background

The plaintiff filed the instant action on April 22, 2011, alleging that, during her employment in Maine by Rite Aid as an assistant store manager ("ASM") from approximately November 2005 to December 2006 and February 2007 to March 2007, Rite Aid improperly classified her as a salaried exempt employee, failing to pay her compensation, including overtime, for hours worked over 40 per week. *See* Motion at 1-2; Plaintiff's Complaint and Jury Trial Demand (Injunctive Relief Requested) ("Complaint") (Docket No. 1) ¶¶ 8-10. In her suit, brought pursuant to 26 M.R.S.A. §§ 621-A, 626-A, 664, and 670, she seeks to vindicate her rights and those of similarly situated current or former employees of Rite Aid who worked as ASMs, or in comparable positions despite different titles, in Maine for the period from April 22, 2005, to the date of judgment in the instant suit. *See* Motion at 2; Complaint ¶¶ 15, 44-53. She seeks, for purposes of preparation of her motion to certify a class pursuant to Federal Rule of Civil Procedure 23, to compel production of the names and addresses of other ASMs employed at Rite Aid's Maine stores from April 22, 2005, through the present, which the defendants have refused to produce unless ordered to do so by the court. *See* Motion at 2-3.

The defendants represent, and the plaintiff does not dispute, that (i) the plaintiff's counsel, Klafter, Olsen & Lesser LLP ("KOL"), also represent plaintiffs in a Fair Labor Standards Act ("FLSA") collective action pending against Rite Aid in the United States District Court for the Middle District of Pennsylvania, *Craig v. Rite Aid Corp.*, Civil Action No. 4:08-CV-2317 (M.D. Pa.), alleging that Rite Aid misclassified ASMs, (ii) on December 9, 2009, the

*Craig* court conditionally certified a nationwide collective action of salaried ASMs employed since December 9, 2006, (iii) on February 12, 2010, the court ordered that written notice be sent to ASMs regarding the *Craig* case, (iv) notice went out to more than 8,000 ASMs on March 12, 2010, giving them 70 days to decide whether to file a consent to join, (v) only 14 of 165 Maine ASMs notified of the pendency of the *Craig* action, including the plaintiff, opted into *Craig*, (vi) the plaintiff voluntarily dismissed her claims in *Craig* in August 2011 after filing the instant action in April 2011, and (vii) the plaintiff's counsel have access to the contact information of the 14 Maine ASMs working in Rite Aid stores since December 2006 who opted into *Craig*. *See* Opposition at 3-4; Affidavit of Danielle Y. Vanderzanden (Docket No. 28) ¶¶ 2-4; *see generally* Reply.[1]

### III. Discussion

The plaintiff states that the contact information of putative class members is relevant to the claims asserted in her action and necessary to support her motion for class certification, in which she will argue that (i) common questions of law or fact predominate, (ii) joinder is impractical, and (iii) her claims are typical of those of members of the putative class. *See* Motion at 3. She notes that courts have granted similar motions in parallel cases against Rite Aid currently pending in different venues nationwide, as well as in other putative wage and hour class actions. *See id*. at 3-5.

The defendants do not contest the relevance of the requested information or contend that its production would be burdensome. *See generally* Opposition. However, they argue that the Motion should be denied on one or more of the following grounds: that (i) the plaintiff's request

---

[1] The defendants acknowledge that the plaintiff's counsel do not have access to contact information for the Maine ASMs who did not opt into *Craig,* the parties having agreed to use a third-party administrator to handle the sending of the *Craig* notices. *See* Opposition at 3 & n.3.

is "overreaching" and likely designed to recruit new clients, given that she seeks primarily to contact non-participants in *Craig*, (ii) the plaintiff does not require the requested information because she and/or her counsel already possess contact information for some Maine ASMs, and (iii) the disclosure would entail an unwarranted intrusion into putative class members' privacy. *See* Opposition at 3-6. In the alternative, the defendants request that, if the Motion is granted, the court exercise its powers under Federal Rule of Civil Procedure 23(d) to supervise communications from the plaintiff's counsel to putative class members or, at a minimum, enter a protective order outlining the parameters of any permissible communications. *See id*. at 6-7.

The plaintiff rejoins that (i) as other courts have recognized, there is a legitimate need for pre-certification discovery in putative wage and hour class actions, (ii) the defendants wrongly presume *Craig* non-participants have no interest in joining the instant Rule 23 class action, (iii) the plaintiff herself has no additional contact information by virtue of her past employment with Rite Aid, (iv) while her counsel do have the contact information of the 14 Maine ASMs who opted into *Craig*, it is insufficient, and (v) any privacy interests of putative class members in the requested information is minimal and is outweighed by the need for the requested discovery. *See* Reply at 1-6. The plaintiff does not object to the entry of a protective order to address privacy concerns but does object to any court supervision of her counsel's communication with putative class members. *See id*. at 5-6.

### A. Asserted "Overreaching" Nature of Requested Discovery

As a threshold matter, the defendants argue that the plaintiff's discovery request is "overreaching," given that she seeks to contact a group primarily consisting of Rite Aid ASMs who, by virtue of their failure to opt into the *Craig* suit, "already indicated they do not want to pursue a claim or be represented by KOL[.]" Opposition at 4. The defendants suggest that, in

5

the circumstances, the attempt to contact the *Craig* non-participants can "be viewed as nothing more than an attempt to obtain additional clients." *Id*. They assert that "[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Id*. (quoting *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI)(MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006)).

The plaintiff reiterates her need for pre-certification discovery and denies that non-participation in *Craig* indicates disinterest in the instant action, given that *Craig* was an FLSA action, in which participants must opt in, whereas this is a Rule 23 class action, in which those wishing not to participate must opt out. *See* Reply at 4-5; *see also, e.g., Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 244 (2d Cir. 2011) ("[A]n employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her FLSA right."); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[I]t may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation.") (citation and internal quotation marks omitted).

The plaintiff's points are well taken. For the reasons articulated by the *Shahriar* and *Damassia* courts, a low opt-in rate in an FLSA action is not necessarily indicative of disinterest in a wage and hour Rule 23 class action. In addition, the fact that the plaintiff seeks to contact *Craig* non-participants, among other putative class members, does not undermine the legitimacy of her stated need for pre-certification discovery.[2] Here, as in *Youngblood v. Family Dollar*

---

[2] The putative class of Maine employees in the instant case presumably is larger than the subset of Maine employees
(*continued on next page*)

6

*Stores, Inc.*, Nos. 09 Civ. 3176(RMB)(FM), 10 Civ. 7580(RMB(FM), 2011 WL 1742109 (S.D.N.Y. Jan. 5, 2011), the defendants' reliance on *Dziennik* is misplaced in circumstances in which "there is no indication that Plaintiffs have anything but a good faith need for employee contact information for the purpose of establishing the propriety of class certification." *Youngblood*, 2011 WL 1742109, at *4 (citation and internal punctuation omitted).

As the plaintiff observes, *see* Motion at 3-5, a number of courts have permitted pre-certification discovery of putative class members' contact information in Rule 23 wage and hour cases, evidently recognizing that, in such cases, the analysis of whether common questions of law or fact exist and whether a plaintiff's claims are typical of those of putative class members can be nuanced and fact-driven, *see, e.g., Indergit v. Rite Aid Corp.,* 08 Civ. 9361 (PGG) (HBP), slip op. at 2 (S.D.N.Y. Aug. 10, 2011), Exh. 1 to Motion (granting plaintiffs' application to compel disclosure of contact information for ASMs who worked in New York during the relevant time period and had not subsequently been promoted to store manager or district manager); *Youngblood*, 2011 WL 1742109, at *2-*3 (observing, in putative Rule 23 class action challenging employees' classification as exempt from overtime compensation requirements, "Plaintiffs clearly will not be able to prove the similarity in class members' 'actual duties' without contacting members of the putative class"; noting, "a number of courts, in this district and elsewhere, have concluded that pre-certification disclosure of the names and addresses of putative class members in wage and hour cases is appropriate"); *Putnam v. Eli Lilly & Co.*, 508 F. Supp.2d 812, 812-14 (C.D. Cal. 2007) (granting pre-certification motion to compel production of names and contact information of putative Rule 23 class members in action challenging

---

in *Craig*. Whereas the *Craig* class consisted of ASMs who had worked in Rite Aid stores since December 2006, *see* Opposition at 3, the plaintiff seeks to certify a class of ASMs who have worked in Rite Aid stores in Maine since April 22, 2005, *see* Complaint ¶ 15.

classification of pharmaceutical representatives as exempt from California wage and hour laws; noting, "Plaintiff has shown a legitimate need for the requested information to determine, among other things, whether common questions of law or fact exist and if plaintiff's claims are typical."); *see also, e.g., Hearn v. Rite Aid Corp.*, Docket No. SSX-L-429-06, slip op. at 3 (N.J. Super. Ct. Nov. 1, 2010), Exh. 2 to Opposition (denying motion for class certification in action alleging that Rite Aid had misclassified ASMs on basis of "[t]he seminal deficiency . . . that questions of law or fact common to the salaried, exempt ASMs do not predominate over questions affecting only individual members").

The defendants fail to make a persuasive case that the plaintiff (i) is "overreaching" in seeking contact information for a group that includes *Craig* non-participants or (ii) fairly can be characterized as seeking such information for the purpose of trolling for new clients rather than as a result of genuine pre-certification discovery needs.

**B. Asserted Lack of Necessity for Requested Discovery**

The defendants next argue that, in any event, the plaintiff does not need the requested contact information. *See* Opposition at 5. This is so, they reason, because her attorneys already have contact information for the 14 Maine ASMs who elected to opt into the *Craig* suit and because she worked as an ASM during parts of 2005, 2006, and 2007 "and must certainly know other individuals who worked as ASMs during the relevant time period." *Id*.

As the plaintiff points out, *see* Motion at 4; Reply at 2, the United States District Court for the District of Oregon rejected a similar argument in a parallel putative Rule 23 class action against Rite Aid alleging misclassification of ASMs, *see Cedano v. Thrifty Payless, Inc. d/b/a Rite Aid*, No. CV-10-237-HZ, slip. op. at 3, 21-24 (D. Ore. May 9, 2011), Exh. 2 to Motion.

8

In *Cedano*, the defendants argued that the plaintiff's pre-certification motion to compel putative class members' contact information should be denied on the bases, *inter alia*, that the plaintiff's law firm, KOL, possessed the contact information of 31 ASMs who had opted into the *Craig* FLSA collective action. *See id.* at 21. The defendants also contended that the plaintiff likely could access additional such contact information because he had worked as an ASM for more than three years and his wife continued to work as an ASM. *See id.* In *Cedano*, as here, the defendants relied on *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553 (D. Minn. 2008), for the proposition that "this is not a case . . . where a plaintiff has been given no access to contact information by [Defendants] and . . . is unlikely to possess such information." *Compare id.* (quoting *Knutson*, 254 F.R.D. at 558) *with* Opposition at 5 (same).

The *Cedano* court distinguished *Knutson* on grounds that (i) in *Knutson*, the plaintiff admitted that she wanted contact information to solicit others to participate in her lawsuit, whereas in *Cedano*, the plaintiff had repeatedly argued that he sought contact information to investigate whether the defendants had made a common decision or individualized decisions regarding classifications of ASMs, and (ii) unlike the defendants in *Knutson*, the *Cedano* defendants did not argue or show that producing the information sought by the plaintiff would be unduly burdensome or expensive. *See id.* at 21-22. The *Cedano* court further noted that *Knutson* was an FLSA collective action, whereas *Cedano* was a putative Rule 23 class action. *See id.* at 22. The court observed that pre-certification discovery in an FLSA collective action is not identical to pre-certification discovery in a Rule 23 class action, given that the showing required for certification pursuant to Rule 23 of numerosity, commonality, typicality, and adequacy of representation is more demanding than that required pursuant to the FLSA that collective-action plaintiffs are similarly situated. *See id.* at 22-23.

The *Cedano* court was unpersuaded that KOL's relationship with approximately 30 putative class members, approximately 15 percent of the putative *Cedano* class, negated the need for the requested discovery in circumstances in which the defendants had not shown that production of the requested contact information was unduly burdensome. *See id*. at 23-24.

The *Cedano* court's analysis is well-reasoned, and I apply it here. In this case, the plaintiff has access through KOL's relationship with opt-in *Craig* class members to an even smaller portion of the total universe of putative class members: 14 of a class numbering at least 165, or less than 10 percent. *See* Opposition at 2. Here, as in *Cedano*, the defendants rely in part on *Knutson*, *see id.* at 5, which is distinguishable for the same reasons as in *Cedano*: that (i) the plaintiff has taken the position that the contact information is necessary to prove her case for Rule 23 certification, *see* Motion at 3; Reply at 2-4, (ii) the defendants have not argued that production of the requested contact information would impose an undue burden on them, *see generally* Opposition, and (iii) this is a putative Rule 23 class action, *see* Complaint ¶ 1, requiring the plaintiff to meet more demanding standards for certification than in an FLSA collective action. Further, as the plaintiff points out, *see* Reply at 4, the defendants undercut their position by suggesting that the 14 Maine ASMs who opted into *Craig* are atypical of the rest of the putative class. The plaintiff persuasively argues that she "should not be limited in her discovery to those ASMs that Rite Aid, from the get-go, will be arguing are atypical." *Id*.

The defendants cite two authorities in addition to *Knutson* for the proposition that the plaintiff does not need the requested contact information: a discovery order that I entered in *Prescott v. Prudential Ins. Co.*, Civil No. 09-322-P-H (D. Me. Feb. 9, 2010), Exh. 1 to Opposition, and *Kernats v. Comcast Corp.*, Case Number 09 C 3368, 2010 U.S. Dist. LEXIS

20276, at *5 (N.D. Ill. Jan. 14, 2010). *See* Opposition at 2-3, 5. Neither counsels the denial of the Motion.

In *Prescott*, following a telephonic discovery hearing, I sustained the defendant's objection to three pre-certification discovery requests, one of which sought contact information for all Prudential disability claims handlers. *See Prescott*, slip op. at 2. I stated that "the question is a close one, and . . . the reported case law conflicts," but that I would follow "the majority of reported cases[.]" *Id*. I explained: "Weighing the equities, the parties do not dispute that there are a number of individuals who have already been identified who can provide evidentiary support for a motion for certification, the only matter at issue at this time in this case." *Id*.

*Prescott* cannot reasonably be read as supporting the denial of the instant Motion. *Prescott* was an FLSA collective action, *see id*. at 4-5, requiring a less demanding showing for certification than a Rule 23 class action, and the plaintiff did not dispute that a number of individuals had been identified who could provide evidentiary support for a motion for collective action certification, *see id*. at 2. Even so, I found the question of whether to sustain the objection "close[.]" *Id*. The plaintiff in this case, by contrast, must make the more demanding showing required for Rule 23 class certification. While she has conceded that she has contact information for 14 putative class members, she has argued persuasively that more is required. *See* Reply at 4. As discussed above, the caselaw that she cites in support of that position is well-reasoned and persuasive.

*Kernats*, as well, is distinguishable. The court in *Kernats*, a putative Rule 23 wage and hour class action, indeed denied a pre-certification motion by the plaintiffs to compel the disclosure of contact information of putative class members, noting, *inter alia*, that "[w]here, as

11

here, plaintiffs have other means of accessing information for at least some class members – for example, three of the named plaintiffs still work in Comcast's call center . . . – courts generally deny discovery requests like this one." *Kernats*, 2010 U.S. Dist. LEXIS 20276, at *6. However, insofar as appears, the plaintiffs in *Kernats* did not even argue that they sought the contact information for purposes of preparing a motion for class certification. Rather, they expressed concern that the defendant employer had begun to interview putative class members, whom they deemed to be represented by class counsel. *See id*. at *2-*4, *7-*8. In addition, whereas three named plaintiffs continued to work for the defendant employer in *Kernats*, the plaintiff in this case last worked as an ASM for Rite Aid in March 2007, *see* Complaint ¶ 8, and her counsel represent that she has no additional contact information for other ASMs, *see* Reply at 3.

I am persuaded that the plaintiff has a need for the requested information.

### C. Privacy Interests/Request for Protective Order

Nor do privacy concerns counsel the denial of the Motion. "Unlike privileged information, the protection afforded to privacy claims is qualified, not absolute." *Khalilpour v. CELLCO P'ship*, No. C 09-02712 CW (MEJ), 2010 WL 1267749, at *3 (N.D. Cal. Apr. 1, 2010). "In each case, the court must balance the right of privacy asserted against the need for discovery." *Id*.

The defendants argue that the privacy rights of third parties, particularly those who have already rejected participation in the *Craig* suit, should be protected until the court has an opportunity to consider the plaintiff's motion for class certification. *See* Opposition at 6. They observe that, in *Hill v. R+L Carriers Shared Servs., LLC*, No. C 09-1907 CW (MEJ), 2010 WL 4175958 (N.D. Cal. Oct. 20, 2010), the court refused to order pre-certification production of

contact information of non-participants in an FLSA collective action based on those third parties' privacy rights. *See id*.

As the plaintiff points out, *see* Reply at 2, the *Cedano* court rebuffed a virtually identical argument, distinguishing *Hill* on grounds that (i) in *Hill*, the plaintiff sought contact information for non-participants in the FLSA portion of a *combined* FLSA/Rule 23 suit, whereas, in *Cedano*, the plaintiff sought contact information of persons who had chosen not to opt into *Craig*, a *separate* FLSA collective action, and (ii) the court in *Hill* precluded the discovery of the contact information in part because of an unspecified "history of discovery disputes." *Cedano*, slip op. at 19-20 (quoting *Hill*, 2010 WL 4175958, at *2). The same analysis pertains here.[3]

Beyond this, as the plaintiff notes, *see* Motion at 5, courts have held that individuals' privacy interests in contact information such as names and addresses is minimal and, thus, not a bar to legitimate discovery requests, *see, e.g.*, *Youngblood*, 2011 WL 1742109, at *4 ("[D]isclosure of the names and addresses of potential class members does not involve revelation of personal secrets, intimate activities, or similar private information, which have been found to be serious invasions of privacy.") (citations and internal quotation marks omitted); *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) (same).

Courts have found the entry of a protective order sufficient to safeguard putative class members' privacy interests in their contact information. *See, e.g., Khalilpour*, 2010 WL 1267749, at *3 (defendant's concern for the privacy rights of putative class members could be addressed through a protective order); *Acevedo*, 248 F.R.D. at 554-55 (same); *Putnam*, 508

---

[3] In addition, despite the privacy concerns expressed by the court in *Hill*, the court left the door open to a renewed request for the contact information if the plaintiff continued to find such information necessary after reviewing declarations of both opt-ins and non-opt-ins regarding their jobs, which the court ordered the defendant to produce to the plaintiff. *See Hill*, 2010 WL 4175958, at *2. There is no indication here that evidence similar to those declarations exists.

F. Supp.2d at 914 (same). The plaintiff does not object to the entry of a protective order in this case. *See* Reply at 5.

In the circumstances presented, in which the plaintiff has shown a legitimate need for the requested discovery, the concerns raised by the defendants over putative class members' privacy interests support the entry of a protective order, not the denial of the Motion.

### D. Request for Supervision of Plaintiff's Counsel's Communications

The defendants request, and the plaintiff objects to, the undertaking of some level of court supervision of the plaintiff's counsel's communications with putative class members. *See* Opposition at 7; Reply at 6.

Plaintiffs generally have a right to contact members of a putative class. *See, e.g., Williams v. Chartwell Fin. Servs., Ltd*., 204 F.3d 748, 759 (7th Cir. 2000). However, Rule 23(d) authorizes the courts to regulate communications with putative class members even before certification. *See* Fed. R. Civ. P. 23(d); *Hinds County, Miss. v. Wachovia Bank N.A*., 790 F. Supp.2d 125, 134 (S.D.N.Y. 2011). "[B]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hinds County*, 790 F. Supp.2d at 134 (citation and internal quotation marks omitted). "However, any order limiting communications should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id*. (citation and internal quotation marks omitted.). "The Court's primary purpose in supervising communications is . . . to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Id*.

The defendants contend that court supervision of plaintiff's counsel's communications is warranted because (i) most of the putative class members already have heard about, and rejected pursuing, a misclassification claim and (ii) the plaintiff's counsel inevitably would end up contacting former ASMs who have since been promoted to a position in Rite Aid's management control group and, hence, constitute the defendants' counsel's clients for purposes of the rule against *ex parte* communications with another lawyer's client. *See* Opposition at 7; *see also, e.g., Belote v. Maritrans Operating Partners, L.P.*, No. CIV.A. 97-3993, 1998 WL 136523, at *1-*2 (E.D. Pa. Mar. 20, 1998) (employee with managerial responsibility was a party and was represented by company for purposes of the rule against *ex parte* communication).

As the plaintiff points out, *see* Reply at 6, the *Cedano* court rebuffed a request that it "regulate" the plaintiff's counsel's pre-certification communications with putative class members "to ensure there is no improper solicitation of new named plaintiffs or other inappropriate statements[,]" *Cedano*, slip op. at 25-26. The court stated:

> While this court recognizes its authority to regulate communications with putative class members, it also recognizes that such authority is warranted based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. At this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture, especially in light of the fact that the parties have failed to even assert that any abuse in communications has occurred.

*Id*. at 26 (citation and internal quotation marks omitted).

On this issue, I find *Cedano* distinguishable and decline to follow it. In this case, unlike in *Cedano*, the defendants make a persuasive case for some level of court supervision of the plaintiff's counsel's communications with putative class members. The fact that some persons in the putative class are likely to be in the defendants' managerial control group raises serious concerns, warranting the creation of parameters to avoid inadvertent *ex parte* contact between the

15

plaintiff's counsel and such individuals. In addition, while I agree with the plaintiff that the low opt-in rate in *Craig* is not necessarily indicative of disinterest in the instant putative Rule 23 class action, the fact that many putative class members have already been contacted in connection with the *Craig* suit creates a potential for confusion, warranting court supervision.

Because neither side has proposed parameters of a protective order or an order addressing court supervision of communication with putative class members, I deem it appropriate to direct the parties, pursuant to Local Rule 26(b), to confer and attempt to reach agreement with respect to a proposed order or orders to be entered by the court, failing which I will resolve any disputes regarding those matters.

### IV. Conclusion and Order

For the reasons set forth above, I **GRANT** the Motion and **GRANT** the defendants' requests for the entry of a protective order and some level of court supervision of communications between the plaintiff's counsel and putative class members.

Pursuant to Local Rule 26(b), the parties are **DIRECTED** to confer regarding the language of a proposed order or orders addressing those subject matters and to file on ECF, no later than December 5, 2011, a motion for approval of an agreed-upon order(s) or, barring such agreement, separate motions for approval of proposed order(s). In either case, the motion(s) shall supply reasoned argument for adoption of the suggested language.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 18th day of November, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge